## In the Matter of John Hicks and Joshua Hicks.

*Practice in the Circuit Court: Tort for fraudulent conversion of property: Holding defendant to bail.* Property described in a chattel mortgage, and which is taken out from its operation by a fraudulent contrivance of the mortgagor, is wrongfully converted; for which an action of tort may be maintained, and the defendant held to bail.

*Sale of chattels: Conditional delivery.* Upon a sale of personal property,—machinery, designed to be fixed to realty,—a part of the purchase price being paid in cash, and the balance secured by chattel mortgage on the same property, which, however, was not to be delivered, until the owner of the realty should endorse upon the mortgage his recognition of the rights of the mortgagee, the title passes on the day of the sale; the delivery only is suspended until such recognition is endorsed.

Error to Ionia Circuit.

The Fulton Iron and Engine Works commenced an action in the Circuit Court, for the County of Ionia, by the issuing of a *capias ad res.* against Louis Hicks, John Hicks and Joshua Hicks, upon which the Circuit Court Commissioner of that county endorsed an order to hold John Hicks and Joshua Hicks to bail. This order was made upon the following affidavit:

"STATE OF MICHIGAN, COUNTY OF IONIA, ss. James B. Wayne, of Detroit, in the County of Wayne, being duly sworn, saith that he is Treasurer and General Business Agent of the Fulton Iron and Engine Works, a corporation existing under and by virtue of the laws of Michigan, and doing business at Detroit, aforesaid, and that he is personally cognizant of the facts stated in this affidavit.

"Deponent further saith, that on the 24th day of March

A. D. 1869, the said Fulton Iron and Engine Works sold to Louis Hicks, John Hicks and Joshua Hicks, doing business at Saranac, in said County of Ionia, under the name of Hicks Brothers, a second-hand horizontal steam engine, complete, with shaft, fly-wheel, governor, independent force-pump, with counter-shaft, pulleys, and box; also one heater; also one double saw mill, complete; also two second-hand boilers, with steam drum, mud-pipe, breeching, and fire-front for same: that at the time of sale the said Hicks Brothers paid the said Iron and Engine Works, eight hundred dollars, and to secure the balance of seventeen hundred and thirty-five dollars, executed and delivered to deponent a mortgage upon the aforesaid property, besides their two notes; that said mortgage was dated the 24th day of March, A. D. 1869, and was sent by deponent, with the said property, to the Agent of the Detroit and Milwaukee Railroad Co., at Saranac, with directions to deliver the said property to the said Hicks Bros., upon their obtaining from one D. F. Frazell, who was the owner, of a certain lot of land upon which the said Hicks Bros., proposed to erect a certain steam saw mill, and to place therein the aforesaid property for the purpose of manufacturing lumber with the same, a recognition of the said Engine Works' right to said property; that upon obtaining such recognition, the said agent was directed by deponent to deliver said property to the said Hicks Bros.; that upon the 31st day of March, A. D. 1869, deponent received the said mortgage from the said agent, with the consent of said owner endorsed thereon, and that deponent forthwith transmitted said mortgage to the Township Clerk of town of Boston, being the town in which said property is situated, and said mortgagors reside; that said mortgage was filed in said office on the first day of April, A. D. 1869.

"Deponent further saith, that on the 30th day of March, A. D. 1869, while a portion, if not the whole of said property was still in the possession of the railroad, at its depot

in Saranac, the said Louis Hicks, John Hicks and Joshua Hicks purchased a lot of logs of one Charles Macomber, and with intent to deceive and defraud said Engine Works, represented to the said Macomber that the said property was entirely free from all liens and incumbrances, and thereby induced the said Macomber to give them credit, and for the purpose and thereupon and on the 30th day of March, A. D. 1869, executed and delivered to the said Macomber a second chattel mortgage upon the aforesaid property, with a lot of logs, to secure the sum of nine thousand eight hundred and fifty-nine dollars, and caused the said mortgage to be filed in the office of the said Township Clerk, on the 30th day of March, A. D. 1869, at seven o'clock in the evening, thereby giving the said mortgage a priority over the mortgage to the said Iron and Engine Works.

"Deponent further says there is now due the said Iron and Engine Works, the sum of eighteen hundred and three dollars, and that at the time the said mortgage to Macomber was given, the said Louis Hicks, John Hicks and Joshua Hicks knew that said first mortgage was not placed upon file, and that they made the said representations to Macomber for the purpose of obtaining credit from him, and of securing to him a priority over this deponent's mortgage.

"Deponent further saith that said property mortgaged to Macomber is not worth more than the amount of his mortgage, and that by the fraudulent giving of said second mortgage, the mortgage to said Engine Works is rendered worthless."

The affidavit of Wayne was corroborated by the affidavit of Charles Macomber, also attached to the writ, that John Hicks and Joshua Hicks, represented to him that the machinery was entirely free and clear of all incumbrances whatever.

The two Hicks brothers, against whom the order to

hold to bail was granted, were arrested. Whereupon they sued out of the Ionia Circuit Court a writ of *habeas corpus*, and on the hearing, were discharged. The writ of error in this case was issued to bring before this Court the proceedings on the *habeas corpus*.

*Newberry, Pond & Brown*, for plaintiff in error.

The action is not upon contract into which the plaintiffs had been drawn by fraudulent representations, but in *case* for a tort. Whenever trespass, trover or replevin will not lie, case can be sustained whenever there has been a *wrong done by the defendant and a resulting injury to the plaintiff.—Low v. Martin, 18 Ill., 290; Upton v. Vail, 6 Johns., 181; Griffin v. Farwell, 20 Vt., 151; Ashby v. White, Ld. Ray. 938; Paisley v. Freeman, 3 T. R., 63; Sheldon v. Fairfax, 21 Vt., 102; Lanridge v. Levy, 2 M. & W., 519; Weatherford v. Fishback, 3 Scam., 170; Bond v. Hilton, Busbee (N. C.), 308; Googins v. Gilmore, 47 Me., 9.—* Though we find no case precisely analagous to the present, that of *Manning v. Monaghan, 23 N. Y., 539,* is very similar. And see,—*Forbes v. Parker, 16 Pick., 462.*

That a mortgagee of personal property may sue for an injury to his reversionary interest, see *Googins v. Gilmore, 47 Me., 9; Ayers v. Bartlet, 9 Pick., 156.*

But it is insisted that it does not appear that the property had passed at the time the second mortgage was given and consequently that Macomber is not entitled to priority. Though it had been the intention of the Engine Works that the property should not pass until the assent of the owner had been obtained, still it is clear the property would pass, and Hicks' title become perfect *as soon as that condition was performed.*

The question of delivery is not material. 1. Because the Hicks had paid $800 at the time of the sale, and the property was theirs, subject only to the performance of the condition. 2. Because it is admitted and appears from the

affidavit to have taken place not later than the 31st. It was to take place as soon as the condition was performed, and was actually taking place at the time the second mortgage was given. 3. Because delivery is necessary to vest title only as against attaching creditors, *bona fide* purchasers and stoppers *in transitu*. It has no application here, as parties may mortgage that of which they have not the possession. See *1 Pars. on Cont.* ( *old. ed.* ) *p. 438; Burrill on Assignments, p. 72 ; Hilliard on Sales, p. 11*, notes; *Butterfield v. Baker, 5 Pick., 522.*

There was no negligence on our part, and if there had been, it would not affect the case. The doctrine of contributory negligence applies only in cases of *negligence* on the part of defendant, not in those of *fraud*. Besides, the alleged negligence was by express understanding between plaintiff and defendants.

The law *infers* damage from the destruction of the security, and plaintiff is under no obligation to show there is no possibility of collecting in any other way.—*Suydam v. Watts, 4 McLean, 162 ; Sampson v. Houdinot, 1 C. B. (N. S.) 590 ; Rhinelander v. Barrow, 17 Johns., 538.*

"Damages are either general or special. General damages are such as the law implies or presumes to have accrued from the wrong complained of. It does not appear necessary to state the former description in the declaration."—*Sedgwick on Damages, chap. 24, p. 575 ; Forbes v. Parker, 16 Pick., 462; Sedgwick, p. 488.*—Perhaps, in cases of mortgages, the more correct measure would be the value of the property not exceeding the amount due on the mortgage.—*Forbes v. Parker, 16 Pick., 462 ; Barry v. Bennet, 7 Met., 354.*—The amount of damages is material only in fixing the bail.

*Dodge & Hutchinson,* for defendants in error.

1st. Admitting the facts set forth in the affidavit to be true, the relators insist that they are not sufficient in the

law to entitle the respondents to *capias ad respondendum* or to sustain an action on the case, for—

—An action on the case will not lie to recover damages for causing the plaintiff's entry of public lands to be set aside by means of a false affidavit, made by the defendant, to establish a prior pre-emption right to the same lands in himself.—*Abbott v. Bahr., 3 Wis.,* ( *Chand.* ) *210.*—An action on the case will not lie for an injury sustained by the plaintiff in consequence of a perjury on the trial of a suit.—*id.*

If an action on the case will not lie to recover damages, for making a false affidavit, by means of which the plaintiff's previous entry of public lands was set aside, and the defendant acquired the land; *a fortiori,* such an action will not lie for a false statement whereby a party acquired nothing, and was under no obligations but a moral one to tell the truth. Where a fraudulent conveyance of property is made for the purpose, and with the intent to defraud creditors, an action on the case will not lie, by one of the creditors against the parties to that conveyance to recover damages for that cause.—*Moody v. Burton, 27 Maine, R., 427.*

" Though a defendant has been guilty of a culpable fault, \* \* \* yet, if the plaintiff, by his own \* \* \* want of ordinary care, contributed to produce the result, he cannot recover."—*19 Conn. R., 507 ; Shear. & Red. on Negligence, ch. 3 ; 11 Pick., 533.*

2d. The argument thus far has been based upon the assumption that the respondents had lost their mortgage; secondly, by reason of the false and fradulent representations of the relators. But that security is *not* lost or destroyed. It is good, and the respondents, by their own showing, have suffered no damage whatsoever, and therefore have no cause of action.

It is also urged, " that delivery was unnecessary to pass the title, because they had paid $800, at the time of the sale, and therefore the title was theirs, subject only to the

performance of the condition." Let us see. To constitute a valid sale, there *must be* parties, property, consent of parties, *and the performance of the acts required to complete the contract.*—*1 Bouvier Inst.*, *269.*—No symbolical delivery is claimed. It was actual delivery that was, and must have been talked of between these parties. It was *actual* delivery that the agent was instructed to withhold until the performance of the act required. Time and place of delivery were parts of the contract made in Detroit. When *time* and *place* of *delivery* are agreed upon it *must be made then and there, before title can pass.*—*1 Bouv. Inst.*, *379* ; *Id.*, *380* ; *1 Parsons on Contracts*, *441* ; *10 Barb.*, *95* ; *1 Pick.*, *476.*

CAMPBELL, CH. J.

The parties, who were discharged under the *habeas corpus* proceedings removed into this Court, were arrested on a *capias ad respondendum*, sued out for an alleged injury, for which redress is sought by an action on the case in the nature of an action of trover. The validity of the arrest depends on the affidavit, which sets out in substance these facts.

On the 24th day of March, 1869, the Fulton Iron and Engine Works, of Detroit sold to the Hicks brothers, who were doing business at Saranac, in Ionia County, certain machinery adapted to the purposes of a saw mill, and at the time of sale the purchasers paid eight hundred dollars in cash, and gave their notes and chattel mortgage of the same date for the balance. This mortgage was sent by the Fulton Works, with the property, to the agent of the Detroit and Milwaukee Railroad Company, at Saranac, with directions to deliver the property to Hicks brothers, upon their obtaining from the owners of the land upon which they proposed to erect a steam saw mill, in which the machinery was to be placed, a recognition of the rights of the Fulton Works to the property. On March 31, the Fulton Works

received the mortgage back from the agent, with the recognition endorsed, and sent it at once to the Town Clerk of the town where the Hicks brothers lived, and where the property was situated, and he filed it in his office on the next day—which was April 1, 1869.

On the 30th of March, while a portion, if not all, of the mortgaged property was in the possession of the railroad, in the depot, Hicks brothers purchased a lot of logs of one Charles Macomber, representing that the property was free from liens and incumbrances, and induced Macomber to give them credit, and on the same day gave him a second chattel mortgage upon it, with some logs, to secure $9,859, which they delivered to him and caused to be filed with the Town Clerk, at 7 o'clock in the evening of the 30th, thereby, as was alleged, giving that mortgage a priority. It is stated that the Hicks knew the first mortgage was not on file, and did all these acts to get credit from Macomber, and secure him a priority, and that the property mortgaged to him is not worth more than his mortgage, and the first one is rendered worthless.

The objections made to the affidavit are two: First, that if the second mortgage was by these acts given priority, they would not give any cause of action for the injury; and second, that it does not appear that any such priority was gained.

A mortgage not recorded or followed by continued possession is void as against subsequent rights, and property which is taken out from its operation by a fraudulent contrivance of the mortgagor is to all intents and purposes wrongfully converted. The mortgagee loses it as effectually as if it had been destroyed or stolen.—*Fenn v. Bittleston, 8 L. & Eq. 483; Forbes v. Parker, 16 Pick., R. 462; Manning v. Monaghan, 23 N. Y., 539.*

The execution of a second mortgage is not necessarily fraudulent, and if the mortgagor does not have reason to suppose the prior one is not on file, his omission to give

notice of its existence may be free from fault. But when he knows the first is not on file, and makes the second with the actual design of supplanting the first, instead of leaving it subject to the first, he is guilty of such a wrong as directly destroys the security, and must be held legally responsible as a wrong-doer.

It is claimed, however, that no title passed to Hicks brothers until the property was given up by the railroad agent, upon obtaining the approval of the land owner, and that, for anything appearing the mortgage to Macomber was made when they had no title, and was inoperative to affect the other mortgage, which attached instantly on that delivery. How far this result would follow, upon such facts, we need not consider, because the case is different. It is a familiar principle that a deed cannot be delivered in escrow to the grantee.— *Dawson v. Hall, 2 Mich., R., 390.* — The affidavit states positively that the property was sold on March 24th, that there was a part payment in money made, and that the chattel mortgage was given the same day: That this mortgage was sent by the mortgagees, with the property, to the railroad agent, with authority to deliver the property upon obtaining a recognition of the mortgage rights by the owner of the real estate, on which it was to be placed. There is nothing to favor the idea that the sale was incomplete, or that the mortgage was to be given up, and the sale abandoned and the property taken back, if no such recognition was given. The only thing it was to affect was the delivery up of the property. If possession by the mortgagee were inconsistent with the security, then a question might arise as to its effect here. But so far from this being so, it was—as against creditors and others—until recently, held that a want of possession raised a presumption of fraud. And under the allegations in the affidavit, the possession can only be referred to the mortgage, and the title was vested in Hicks brothers on the 24th of March.

If this is so, then the subsequent mortgagee, by his security, obtained advantages against the prior mortgagees which would make the Hicks brothers responsible as wrong doers, in dishonestly creating them, and the affidavit justified the arrest.

The judgment of discharge must be reversed, with costs.

The other Justices concurred.