CHAS. COUNSELMAN & COMPANY, Appellant, v. EMANUEL
REICHART.

**Gambling Contract:** EVIDENCE. Defendant telegraphed plaintiff:
"Buy five thousand Sept. oats below thirty-one. Draw on me for
margins," and by a subsequent telegram directed plaintiff to "sell
September, and buy May." Defendant failed to put up margins
and the May oats were sold at a loss. Plaintiff paid the loss, and
sued to recover the same, but failed to disclose from whom he
purchased, or to produce any memorandum of the transactions;
while defendant denied that the purchases were actually made,
and testified that in ordering such purchases he did not intend
any delivery of the grain to him. *Held*, that a verdict for
defendant was warranted.

SAME. To render a contract in grain futures void as a mere specula-
tion on the chances of rise and fall of the market, with no inten-
tion to deliver the grain, both parties thereto must have contem-
plated that no delivery would be made; and the contract between
commission merchants and a customer is not void on that
ground, although the customer intended, only, to speculate on
margins without a delivery of the grain, if the commission mer-
chants intended an actual delivery.

SAME: *Intent.* A party to a contract in grain futures may attack
it on the ground that it is a mere gambling contract and may
testify as to his intention with reference to the delivery of the
grain when he made the purchase. Citing *Pope v. Hanke*, 155
Ill. Sup. 617 (40 N. E Rep. 839); *Crandell v. White*, 164 Mass. 54
(41 N. E. Rep 204).

PRESUMPTIONS. The jury are warranted in drawing an inference
unfavorable to the existence of the intention on the part of a
commission merchant in purchasing "futures" grain for a cus-
tomer, that there should be an actual delivery, from his failure to
produce the paper and documents showing a purchase by him
on the market, in response to the demand of the other party.

*Appeal from Cass District Court.*—HON. A. B. THOR-
NELL, Judge.

FRIDAY, OCTOBER 22, 1897,

THE plaintiff firm is engaged in the commission business in Chicago, Ill. The defendant, in 1894, was engaged in the grain business at Neola, Iowa, and shipped grain to the plaintiff in Chicago. This action is brought to recover a balance of five hundred and five dollars and forty-three cents on account. June 14, 1894, the defendant, by telegram, directed plaintiff to buy for him five thousand bushels of September oats. On the thirty-first of August, 1894, defendant directed plaintiff to sell the oats, and to buy for him five thousand bushels of May oats. Plaintiff reported to defendant a loss on the September oats of six dollars and twenty-five cents, and charged a commission of six dollars and twenty-five cents, making an aggregate charge against defendant on that transaction of twelve dollars and fifty cents. The purchase of the May oats was reported as made, and, after a neglect or refusal to put up margins by defendant, the grain was closed out January 25, 1895, with a loss, including commission, of three hundred dollars. The losses on the two oats transactions, including commissions, and a balance on account of grain shipped to Chicago, make up the aggregate of plaintiff's claim. As to the balance of one hundred and ninety-two dollars and ninety-three cents, on account of grain shipped, there is no question, and defendant offered to confess judgment for the sum of two hundred and twenty dollars, being for that amount with interest. The contention is as to the claims based on the two transactions in the purchase of oats. The defendant denies the purchase, and avers that the transactions were illegal, as being gambling contracts, in that they were mere speculations in margins, with no intention to make actual purchases or sales of grain. The issues were tried to a jury that returned a verdict for plaintiff for two hundred and seventeen dollars and six cents, being less than the offer of judgment. There was a

judgment on the verdict, and the plaintiff appealed.— *Affirmed.*

*De Lano & Meredith* for appellants.

*Swan & Bruce* for appellee.

GRANGER, J. — The court instructed the jury that, inasmuch as it appeared from the evidence that plaintiff, as agent for defendant, made the purchase of the May oats, and because of defendant's failure to put up the margins the oats were sold at a loss by plaintiff, and as it is not claimed that plaintiff, in so doing, exceeded its authority, and as plaintiff paid the loss, it is entitled to recover the amount of the loss, with interest, "unless it further appears from the evidence that the purchase of said oats by plaintiff was, in contemplation of law, a gambling contract." There are some questions argued quite extensively, about which there is no dispute, and they may be set at rest without extended notice. Contracts for grain, where the intention is to merely speculate on the chances of a rise or fall of the market, and no delivery is intended, are gambling contracts, and void. It is not enough, to render a contract void, that the buyer intends it as a gambling contract, unless the seller participates in that intention; that is, if, in the case at bar, the defendant, in ordering the purchase of the oats, only intended a speculation upon margins, without a delivery of grain, and the plaintiff purchased the grain for actual delivery, it would not be a gambling contract. To make the contract void as between these parties, the intention to make a gambling contract must have been mutual. McClain's Code, section 5349; Acts Twentieth General Assembly, chapter 93, section 1. The court so instructed the jury. It also said in its instructions: "In

deciding what the intention of said parties was in mak-
ing said contracts, you have the right to consider, not
only the direct evidence of the parties as to their inten-
tions, but also, as far as shown by the evidence, how
the contract or contracts were made, and their terms,
who was the purchaser and seller, how the losses on
said contracts were in fact settled, whether any grain
was in fact handled or delivered in the settlement
thereof, and every other fact and circumstance shown
by the evidence, and throwing light thereon."

2      The court permitted the defendant to testify as
to his intentions in ordering the purchase of the
oats, whether there was to be a delivery; and it is
thought the court erred in so doing. We think not. It
was a fact directly involved, and the question we are
considering was ruled in *National Bank v. Packing Co.*,
66 Iowa, 41. In that case, speaking of the intention of
the purchaser in such a transaction, it is said: "This
essential element in the case the defendant was bound
to establish, and there was no better evidence by which
to show it than by proving the intention of the very
party who made the contract in behalf of the defend-
ant." In *Pope v. Hanke*, 155 Ill. Sup. 617 (40 N. E. Rep.
839), speaking of how the mutual intention may be
established, it is said: "This intention may be estab-
lished, not merely by the assertion of the parties, but
by all the attending circumstances of the transactions."
See, also, *Crandell v. White*, 164 Mass. 54 (41 N. E. Rep.
204). It is said that the uncommunicated motive or
intention of the defendant should not have been
admitted in evidence, because it did not enter into, nor
become a part of, the contract between the plaintiff and
the defendant. If both had that intention, it made a
meeting of minds upon that fact, and that is what made
the contract. It is not to be fairly said that such trans-
actions are carried on without an understanding about
so important a factor of the transaction as whether the

grain is to be delivered or not. Defendant's intention would not control, but it was essential to be known in connection with the intentions of the plaintiff. When both are known, they fix the fact of whether or not there was a mutual intention that the grain was not to be delivered. There was no purpose to make defend- ant's uncommunicated intentions a part of the contract, except in so far as they were understood, and, together with plaintiff's intentions, completed an understanding.

Much importance is attached to the fact by appel- lant that the only communications by the parties were by letter and telegrams, which are in evidence, and they make no disclosure of a purpose not to deliver the oats. The directions to buy were: "Buy five thousand Sept. oats below thirty-one. Draw on me for margins." "Sell September, and buy May." It was upon these telegrams that the purchases and sale were to be made. They are evidence on their face that the parties understood what was not expressed. Neither telegram purports to express all that is intended to be understood. In several particulars they are incom- plete as to details essential to a complete contract. In view of the generally known fact that business on the board of trade is conducted on a plan of non-delivery of produce, but as a speculation in margins or differ- ences, it may well be said that the fact of whether there was to be a delivery of the grain in question was one of understanding between the parties, independent of the orders for purchases. This understanding, under the issues, was a matter to be established by proof. Each party testified to the intention as to delivery. Other evidence was submitted, and the jury may have found that no purchase was made by plaintiffs, or, if made, that it was with no intention of a delivery. Plaintiffs, if they made the purchases in good faith, knew of whom they made them, and the particulars; so that they could have disclosed the facts.

They were asked to make exhibits of papers and documents showing the transactions, and they said the written memoranda of the purchases would be furnished by the bookkeepers. None was so furnished. A fair inference is that none could be furnished favorable to plaintiffs. In the face of a denial that such purchases were made, and a charge that the transactions were illegal, and with exclusive knowledge of the particular facts, and how they could be disclosed, the plaintiffs failed to give light as to the facts, where it especially devolved on them to do so because of such exclusive knowledge. We think the verdict has support in the evidence, and the judgment will stand AFFIRMED.