## WALDRON et al. v. JOHNSTON.

(Circuit Court, S. D. Georgia, E. D. March 2, 1898.)

GAMING CONTRACTS—DEALING IN FUTURES.

A contract for the future delivery of cotton, made merely to speculate in differences on the rise and fall of the price without any intention to deliver or receive cotton, is void as a gaming contract, not only under Code Ga. § 3671, but also under the general law as announced by the supreme court of the United States.

This was an action of assumpsit by Waldron & Taintor against James H. Johnston.

Garrard, Meldrim & Newman, for plaintiffs.

Erwin, Du Bignon, Chisholm & Clay and Saussy & Saussy, for defendant.

SPEER, District Judge. The case presented for decision is this: An auditor finds that the defendant is indebted to the plaintiffs on their demand in the sum of $3,035.37. The defendant has filed exceptions to the report upon the material ground that the conclusions of law which the auditor draws from his findings of fact are erroneous. The finding of fact not excepted to, and therefore admitted to be true, upon which I think the decision must depend, is as follows:

"I find that the defendant during the same period resided in Savannah, Georgia, and was there engaged in mercantile pursuits, and that he employed the plaintiffs to make contracts for the future delivery of cotton in New York, with the intention of realizing upon the differences in values arising under said contracts in the New York market before the time for the delivery of said cotton arrived. I further find that he never intended to deliver or receive cotton under said contracts, but relied on his agents to avoid this contingency. I find that the defendant's intention not to deliver or receive cotton, but simply to realize upon the differences in values, was known to the plaintiffs, and that they so managed his business as to carry out this intention, and did, so far as he was concerned, avoid the delivery of cotton."

It is insisted by the defendant that this finding affords an instance of a gaming contract which the courts will not lend their aid to enforce. Code Ga. § 3671, provides as follows:

"Gaming contracts are void, and all evidences of debt or encumbrances or liens on property executed upon a gaming consideration are void in the hands of any person."

The statute is not enacted to favor a defendant who has engaged in transactions of this character, but as an expression of a definite and fixed policy to discourage and prevent transactions which the law-making power has determined to be contra bonos mores. The topic has been repeatedly discussed by the supreme court of the state. In Cunningham v. Bank, 71 Ga. 400, transactions in "futures," similar to those now before the court, were declared to be "wagering," "gambling," "immoral," and "illegal contracts." The transactions thus stigmatized by the supreme court of the state, to quote its description, was "the purchase of certain cotton with the intention and understanding of both parties that the cotton was not to be delivered to or received by the defendant; that there was to be a settlement at a future day, when the defendant was to receive or pay the differences between the

contract price and the market price." The same case was again before the supreme court and was reaffirmed. 75 Ga. 366. A note which had been given to the payees, the consideration of which was money to be expended by them in the purchase of "cotton futures" for and on account of Cunningham, was held to be void. In Walters v. Comer, 79 Ga. 796, 5 S. E. 292, where the defendant dealt with the plaintiffs in their own name and on their own responsibility, and where Comer & Co. admitted that this was done for the purpose of purchasing "cotton futures," the supreme court held it "to be a wagering contract, and that plaintiffs could not recover for services or losses incurred in forwarding the transaction." In Alexander v. State, 86 Ga. 246–249, 12 S. E. 408, the supreme court further held that the business of buying and selling "cotton futures" was not protected by the interstate commerce clause of the constitution of the United States.

The plaintiffs relied upon the cases of Warren v. Hewitt, 45 Ga. 501, and Heard v. Russell, 59 Ga. 25. These are, however, clearly distinguishable from the cases above cited. In both of these cases, which are deemed by their counsel to be favorable to the plaintiffs' view of the transactions, the court found that the contracts were for the purchase of cotton for future delivery. To purchase cotton for future delivery is a very different thing from speculating in the differences which may in future exist because of the rise or fall of the market. The one transaction is not inimical to the policy of the law; the other is denounced, not only by the statute, but by reiterated decisions of the supreme court, expressed with all the emphasis of which the eminent jurists composing it were capable. It is, moreover, true that the salutary principle expressed in the Georgia statute and by these repeated decisions of the supreme court of the state received high sanction and approbation in numerous and controlling decisions of the supreme court of the United States. As early as March 3, 1884, in the case of Irwin v. Williar, 110 U. S. 499, 4 Sup. Ct. 160, the supreme court held as follows:

"If, under guise of a contract to deliver goods at a future day, the real intent be to speculate in the rise or fall of prices, and the goods are not to be delivered, but one party is to pay to the other the difference between the contract price and the market price of the goods at the date fixed for executing the contract, the whole transaction is nothing more than a wager, and is null and void."

It would be difficult to discover a condition more precisely identical with that found to exist by the auditor in this case in his first finding hereinbefore recited. Equally apposite to his second finding is the following declaration of the court:

"When the broker is privy to the unlawful design of the parties, and brings them together for the very purpose of entering into an illegal agreement, he is particeps criminis, and cannot recover for services rendered or losses incurred by himself on behalf of either in forwarding the transaction."

This decision, in which the opinion of the unanimous court was rendered by Mr. Justice Mathews, was again by a unanimous court cited with approbation in Embrey v. Jemison, 131 U. S. 336, 9 Sup. Ct. 776. There, also, Mr. Justice Harlan, speaking for the court, declared:

"In the present case, according to the averments in the plea of wager, the plaintiff was the broker who effected the purchases of future-delivery cotton.

He was privy to the unlawful design of the parties; represented one of them in all the transactions; and advanced the money necessary to carry, and for the express purpose of carrying, these cotton 'futures' on account of the defendant. His position, therefore, was not that of a person merely advancing money to or for one of the parties to a wager, without having himself any direct connection with the making or execution of the contract of wager itself. He was, in every sense, particeps criminis."

It is insisted, however, that a contrary doctrine has been established by the decision of the supreme court in the case of Bibb v. Allen, 149 U. S. 482–505, 13 Sup. Ct. 950, where the decision was rendered by Mr. Justice Jackson. An examination of this case, however, will readily disclose the fallacy of this contention. In Bibb v. Allen, it was, to quote from the language of Justice Jackson on page 490, 149 U. S., and page 953, 13 Sup. Ct., "shown by the correspondence and by other testimony in the case that there was no agreement or understanding between the plaintiffs and defendants that the cotton sold for future delivery was not in fact to be actually delivered. * * * It was also testified by both the plaintiffs and defendant Bibb that there was no understanding or agreement, either express or implied, between them, at the time of entering upon the transactions or during their progress, that the cotton sold for account of the principals was not to be delivered at the time stipulated in the contracts of sale made for their account." And again: "The undisputed testimony establishes that the sales were not wagers, but that the cotton was to be actually delivered at the time agreed upon." If these statements of the learned justice be contrasted with the finding of the auditor in this case, the cases are readily distinguishable. Indeed, Bibb v. Allen is conclusive authority for the defendant in the case at bar, for, after holding that the evidence shows a contract made bona fide for the actual delivery of cotton itself, the learned justice remarks: "It is not questioned that, if the transactions in which the parties are engaged were illegal, the agent cannot recover either commission for services rendered therein or for advances and disbursements by him for his principal;" citing Story, Ag. §§ 330, 334, and Irwin v. Williar, supra. The learned justice brings to assist the cogency of his own reasoning upon the law the custom of perhaps the most authoritative organization of the cotton trade itself when he declares, on page 491, 149 U. S., and page 953, 13 Sup. Ct.: "In addition to this, it is shown that the rules and regulations of the New York Cotton Exchange recognized no contracts except for the sale and purchase of cotton to be actually delivered."

From the considerations of these authorities, the conclusion is obvious and inevitable that, while a contract made in good faith for the future actual delivery of cotton itself is enforceable, yet, however ingenious may be the device to avoid the law, whenever it appears that the transaction in "futures" is made merely to speculate in differences on the rise and fall of the market, and this is known to both parties, the policy of the law commands the court to withhold its assistance to either party. Whether it be true, as insisted, that this policy, if respected by the courts, will serve to discourage dangerous speculation, will encourage the business community to that orderly and legitimate traffic and industry which is the sure precursor of success to the indi-

vidual and large prosperity to the public, will withhold from the youthful or the uninformed those temptations towards daring ventures which often result in bankruptcy and ruin, and will make it more difficult for skillful operators to manipulate for their own profit the rise and fall in the prices of the great staples upon which the welfare of the people depends, it may not be here profitable or appropriate to discuss. It is sufficient to ascertain what is the definite policy of the law, and to obey it. The exceptions are sustained, and a judgment for the defendant will be directed.