DONOVAN *v.* DAIBER.

1. Brokers — Sales — Future Delivery — Margins — Gambling Contract—Question for Jury.

Under 3 Comp. Laws 1897, § 11373, making it unlawful for persons to contract for the purchase or sale of stocks, grain, etc., on margins, without any intent to receive or deliver the property so bought or sold, it was for the jury to say whether a contract, executed through a broker, purporting to be for the sale of wheat on margins for future delivery, was a valid undertaking, where the broker's memorandum stated that in all transactions actual delivery was contemplated, and his testimony was to the effect that in the particular transaction he did not know but that the seller possessed the wheat, and the seller testified that it was simply a gambling contract, and was so understood by all the parties.

2. Same—Unlawful Intent—Mutuality.

In an action by a broker to recover loss on the sale of wheat for future delivery on margins, the fact that defendant intended merely to speculate on the rise and fall of prices did not make

the contract void under 3 Comp. Laws 1897, § 11373, prohibiting such contracts, where plaintiff did not participate in such intention.

3. SAME—VALIDITY OF CONTRACT—OWNERSHIP OF PROPERTY SOLD.
    A contract for the sale of grain for future delivery is not void under said statute merely because the seller has not the grain to deliver, he having the right to procure the same in the market before the time fixed for delivery.

Error to Wayne; Hosmer, J. Submitted February 6, 1900. Decided May 15, 1900.

*Assumpsit* by James H. Donovan against Philip Daiber for money paid to defendant's use. From a judgment for plaintiff, defendant brings error. Affirmed.

Plaintiff was a member of the Detroit Board of Trade. His business was that of a commission merchant, buying and selling wheat and other produce upon commission. His version of the transaction is as follows: Defendant deposited with him $200, and gave him orders to trade for him in grain in Chicago. On June 14, 1897, defendant gave plaintiff an order to sell for him in Chicago 5,000 bushels of wheat for July delivery. Plaintiff had four or five houses in Chicago with which he dealt. He wired one of these houses to sell as directed; received from a Chicago correspondent a telegram stating that he had sold that day at 70⅜. He showed the telegram to the defendant, and gave him a memorandum of the sale. This memorandum reads as follows:

"We have this day made the following trade for your account, upon condition that James H. Donovan & Co. shall have the right to close this contract, at their discretion, whenever the usual margin of ten cents a bushel, or such other margin as has been agreed upon, is not kept good with them. Further, it is understood and agreed that these transactions are made subject to the rules and regulations of the market in which they are made; and it is expressly understood that we solicit and will receive no business except with the understanding that the actual

delivery of the property bought or sold upon orders is in all cases contemplated and understood:

|  | Quantity. | Month. | Articles. | Price. | Remarks. |
|------|-----------|--------|-----------|--------|-----------|
| Sold | 5,000 | July | Wht. | 70% | In Chicago." |

On June 15th, defendant ordered plaintiff to buy 5,000 bushels for July delivery.   Plaintiff wired one of his correspondents in Chicago, receiving a reply notifying him of the purchase, and showed it to the defendant.   Other purchases and sales were made upon the same basis; plaintiff receiving a verbal order from defendant in each instance, wiring one of his correspondents in Chicago, receiving a reply, showing it to defendant, and giving him a memorandum like the above.   On some of these deals there were losses, and on some there were gains.   On August 12th the market was such that it became necessary for defendant to advance more margins to plaintiff in order to keep his contracts good.   Defendant declined to advance, and instructed plaintiff to close the contracts. This the plaintiff did, with the loss of $141.25, for which this suit was brought.   Plaintiff had paid this to his Chicago correspondents.   Plaintiff kept money with these correspondents to keep any contracts he made for his customers good.

Defendant testified that he went to plaintiff because he had been recommended to him as a sharp broker; that he told plaintiff he had had bad luck, and was almost ruined; that he asked plaintiff if he could make money on the board of trade, dealing in or scalping wheat; that plaintiff told him he could; that he gave plaintiff $200, saying this was all the money he was going to invest in the speculation in wheat; that he would be glad to make money, but, if he lost it, that was all the money he wanted to lose; and would not be responsible for anything beyond that; that plaintiff assented to this, and gave a receipt for the money.   He testified that he told plaintiff he had no wheat to sell; that he just wanted to speculate; that he never

knew the names of the parties plaintiff claimed to deal with in Chicago; that he never gave him a statement with the name of the party that plaintiff was dealing with; that he gave plaintiff $40 to hold his deals.

The court instructed the jury that, if they believed the testimony of the plaintiff, and if they found the transactions were legitimate, involving the actual purchase or sale of grain for future delivery, he was entitled to recover. He also instructed the jury that if they found that defendant only agreed to invest the sum of $200, and that the transaction was a gambling one, verdict must be for the defendant.    Plaintiff recovered verdict and judgment.

*Charles C. Stewart*, for appellant.

*Chamberlain & Guise*, for appellee.

GRANT, J. (*after stating the facts*).    The case comes squarely within *Gregory* v. *Wendell*, 40 Mich. 432, where contracts of this character were ably discussed by the late Justice COOLEY, unless the act of 1887 (3 Comp. Laws 1897, § 11373) makes such contracts as were approved in that decision void.    The statute is printed in the margin.[1]

---

[1] Comp. Laws 1897, § 11373: "That it shall be unlawful for any corporation, association, firm, copartnership, or person to keep, or cause to be kept by any agent or employé, within this State, any office, store, or other place wherein is conducted or permitted the pretended buying or selling of the shares of stocks or bonds of any corporation, or petroleum, cotton, grain, provisions, or other produce, either on margins or otherwise, without any intention of receiving and paying for the property so bought or of delivering the property so sold; or wherein is conducted or permitted the pretended buying or selling of such property on margins, when the party selling the same, or offering to sell the same, does not have the property on hand to deliver upon such sale, or when the party buying any of such property, or offering to buy the same, does not intend actually to receive the same if purchased or to deliver the same if sold; all such acts, and all purchases and sales, or contracts and agreements for the purchase and sale, of any of the property aforesaid in manner aforesaid, and all offers to sell the same or to purchase the same in manner aforesaid, as well as all transactions in stocks, bonds, petroleum, cotton, grains, and provisions in the manner as aforesaid, on margins, for future or optional delivery, are hereby declared gambling and criminal acts, whether the person buying or selling, or offering to buy or sell, acts for himself or as an agent, employé, or broker for any firm, copartnership, company, corporation, association, or broker's office."

Under the plaintiff's testimony, he did not know whether defendant had 5,000 bushels of wheat to sell, and did not ask him. A party may make a binding agreement to sell that which he does not have. He may go into the market and purchase it, and he cannot defend, when called upon to perform his contract for future delivery, by saying, "I did not have the property when I made the contract." Commission merchants and others make such contracts, expecting to go into the market and buy. The same rule applies to his purchases. Both parties, under the testimony of plaintiff, understood that actual delivery of the property bought or sold upon these orders could be enforced. This agreement brings it without the statute. If, however, it was understood that this was a mere evasion of the statute, and neither party contemplated an actual sale or delivery, then the transaction was void, and plaintiff could not recover. Upon these points there was a conflict of testimony, which was submitted to the jury upon the theory of both sides. The jury sustained the plaintiff's version, and there was testimony to sustain it. It is quite likely, and in fact very probable, that this was an evasion of the statute, and was so intended by the parties. But, where there is a conflict of testimony, the question becomes one for the jury, and appellate courts cannot interpose their judgment for that of a jury. *Carland* v. *Telegraph Co.*, 118 Mich. 369 (76 N. W. 762, 43 L. R. A. 280). We cannot say that this was a mere wager, based upon the rise and fall of prices. Under the defendant's contract to sell, as stated by plaintiff, plaintiff, or his correspondent in Chicago, could have recovered damages for failure to perform the contract. So, if the seller in Chicago had declined delivery to defendant on his purchase, defendant could also have recovered damages for failure to do so. Under defendant's testimony, the contract was *contra bonos mores*, and within the prohibition of the statute. It is not enough that defendant intended merely a speculation upon margins,—a mere wager upon the rise or fall of prices,—and no delivery. Plaintiff must also have par-

ticipated in that intention. *Wagner* v. *Hildebrand*, 187 Pa. St. 136 (41 Atl. 34); *In re Taylor & Co.'s Estate*, 192 Pa. St. 304 (43 Atl. 973, 18 L. R. A. 855); *Anthony* v. *Unangst*, 174 Pa. St. 10 (34 Atl. 284); *Peters* v. *Grim*, 149 Pa. St. 163 (24 Atl. 192, 34 Am. St. Rep. 599); *Counselman* v. *Reichart*, 103 Iowa, 430 (72 N.. W. 490); *Pratt* v. *Boody*, 55 N. J. Eq. 175 (35 Atl. 1113); *Waldron* v. *Johnston*, 86 Fed. 757; *Embrey* v. *Jemison*, 131 U. S. 336 (9 Sup. Ct. 776); *Whitesides* v. *Hunt*, 97 Ind. 191.

Judgment affirmed.

The other Justices concurred.

