| 125 | 449 |
|-----|------|
| 143 | 683 |

| 125 | 449 |
|-----|------|
| 154 | 507 |

## CLARK *v.* KENT CIRCUIT JUDGE.

1. CAPIAS AD RESPONDENDUM—AFFIDAVIT—DATE:

The fact that an affidavit for a *capias ad respondendum* was signed and sworn to on the day preceding the date of the writ does not entitle defendant to have the proceedings quashed.

2. SAME—ORDER QUASHING WRIT—MANDAMUS TO SET ASIDE.

On *mandamus* to compel a circuit judge to vacate an order quashing a writ of *capias ad respondendum*, statements in the petition as to the grounds of his action, not denied in the return, must, under Supreme Court Rule No. 13, be accepted as true.

3. CONTRACTS—COMMISSION BROKER—STOCK GAMBLING—PRESUMPTION.

A contract whereby plaintiff agreed to furnish defendant, a stock and commission broker, with market quotations, and to pay his license fee, and defendant agreed to place with plaintiff orders received by him from his patrons, cannot be presumed to contemplate a stock-gambling transaction, so as to render it void.

4. CAPIAS—FRAUDULENT CONVERSION—SUNDAY CONTRACT.

One who procures money by fraudulent representations, and converts it to his own use, is liable to arrest on a *capias*, under 3 Comp. Laws 1897, § 9998, allowing the writ in cases of claims for damages other than those arising on contracts, express or implied, even though the representations were made on Sunday, and the money was forwarded pursuant to a contract made on that day.

5. SAME—AVERMENTS IN AFFIDAVIT—SUFFICIENCY.

An affidavit for a *capias ad respondendum* which alleged that plaintiff forwarded a note to defendant for collection, and that he collected $100, which he converted to his own use, and without authority accepted a note for the balance, which he refused to surrender to plaintiff, stated facts sufficient to entitle plaintiff to the writ, since it showed an unlawful conversion of his property.

6. JOINDER OF ACTIONS.

A claim against defendant for fraudulently procuring a sum of money from plaintiff with which to pay a license fee to con-

125 MICH.—29.

duct a business for plaintiff in another city, and a claim for
another sum, the proceeds of a note forwarded to defendant
by plaintiff for collection, both of which sums are alleged
to have been fraudulently converted by defendant to his own
use, may be joined in one action.

*Mandamus* by Arthur J. Clark, Charles R. Evarts, and
Edwin Evarts, copartners as A. J. Clark & Co., to com-
pel Alfred Wolcott, circuit judge of Kent county, to
vacate an order quashing a writ of *capias ad responden-
dum*. Submitted November 13, 1900. Writ granted
December 31, 1900.

*E. J. Adams* ( *Stevenson, Merriam, Eldredge &
Butzel*, of counsel ), for relators.

*Rodgers, McDonald & Minor*, for respondent.

HOOKER, J. Martin V. Elliott was arrested upon a
*capias ad respondendum* at the suit of the relators, and
was duly admitted to bail by the circuit judge as per
order indorsed upon the writ. Subsequently, upon motion
of Elliott, the respondent made an order vacating his
order to hold to bail, and quashing the proceedings, upon
the ground that the affidavit attached to the writ was
signed and sworn to on the day preceding the day of the
date of the writ. A motion was thereupon made by the
relators asking the court to set aside said last-mentioned
order, but this was denied. Counsel now ask a *manda-
mus* to compel the court to vacate the order quashing the
proceedings.

The respondent seeks to justify his action by the terms
of the statute providing that an affidavit is requisite to the
issue of a *capias*. 3 Comp. Laws 1897, §§ 9996, 9999.
At common law the defendant was not liable to be ar-
rested upon *mesne* process for civil injuries unaccompanied
with force. 1 Tidd, Prac. 128. In early times a writ of
*capias* was not an original writ, being issued to insure an
appearance only after an original writ had proved inef-
fective. But by successive enactments it became an

original writ, and was obtainable in all actions for the recovery of money, damages, or personal property. The history of this subject in detail will be found in the introduction to Sell. Prac. pp. 52–59. The affidavit appears to have been made a condition precedent to arrest in the time of George I. The author (page 60) thus tersely shows the great change that took place in the matter of arrest in civil cases:

"Thus stands the law at this day; and the difference in this respect between the modern and ancient practice is most extraordinary. Originally no arrest was allowed for any debt, or purely civil cause of action, but only for trespasses committed *vi et armis*. Now the law is reversed, no arrest being allowed in actions of trespass *vi et armis*, except by a particular order of a judge, but only in cases of debt and other civil actions."

An examination of the cases will show us that the statute was not so strictly construed as to require the affidavit to bear the same date as the writ. Manifestly the date could not be the same when the affidavit was made in Scotland, or without the realm, for a writ to be issued at London, and such was a common practice. Sell. Prac. p. 111. This seems at variance with the case of *Collier* v. *Hague*, 2 Strange, 1270; but it is not necessarily so, in view of the rule which required a new affidavit after the lapse of a year, as in that case the arrest occurred two years and ten months after the affidavit was made. See *Crooks* v. *Holditch*, 1 Bos. & P. 176; Petersd. Bail, 189; *Corrin* v. *Millington*, 2 Miles (Pa.), 267.

It is observable that, through the varying phases of this practice, the rule contended for by the respondent has not prevailed, and the effect of it would be to compel the plaintiff in every case to be within a day's journey of the office from whence the writ is to issue. This would be an inconvenience not called for, as the chances and consequences of a prosecution after a payment or settlement during the time intervening between the making of the affidavit and the issuing of the writ are remote and trifling.

Counsel rest their claim upon a technical construction of the statute, and some cases, arising upon attachment, where such a construction is given to somewhat similar statutes. See *Drew* v. *Dequindre*, 2 Doug. 93; *Hale* v. *Chandler*, 3 Mich. 535; *Wilson* v. *Arnold*, 5 Mich. 98; *McPherson* v. *McGillis*, 93 Mich. 525 (53 N. W. 794); *Northern Michigan Lumber Co.* v. *Lyon*, 95 Mich. 584 (55 N. W. 438). But these statutes are more stringent than those before us, and, furthermore, they introduced an entirely new remedy. If the statutes having application here change the common law by placing greater obstacles in the way of the remedy by *capias*, such obstacles are not to be enlarged by construction. The doctrine that "statutes in derogation of the common law shall be strictly construed" means that they shall be held not to change the common law beyond the requirements of a strict (*i. e.*, necessary) construction. The converse of the proposition is contended for here; *i. e.*, that a strict construction is required, although more destructive of the common-law rule than a liberal construction would be. We think this view of the rule stated is at variance with its spirit. This court has refused to follow the attachment cases referred to, where cited in relation to other statutes. Thus, a justice's transcript filed, and execution issued, three days after the making of an affidavit of the amount due, as required by statute, were held good; and an order of publication, issued some days after the affidavit was made, has been sustained. *Udell* v. *Kahn*, 31 Mich. 195; *Smith* v. *St. Joseph Circuit Judge*, 46 Mich. 338 (9 N. W. 440); *Adams* v. *Wayne Circuit Judge*, 98 Mich. 51 (56 N. W. 1051). We base this decision upon the settled rule that an affidavit need not bear the same date as the writ.

It is claimed that the circuit judge did not limit his decision of the motion to quash to the ground mentioned; but, as the return does not deny the allegation that he did so, we must treat the statement contained in the petition as admitted. Sup. Ct. Rule No. 13. We should not,

however, refuse to consider the other grounds of the
motion, if they are such as justify the order made; for we
are not called upon to compel action in any case when
the record shows that the relator is not justly entitled to
relief.

The affidavit was made by one of the plaintiffs in behalf
of all.   It alleges that the plaintiffs named in the annexed
writ have a claim against the defendant therein for dam-
ages in excess of $100, upon which the affiant believes that
the plaintiffs are entitled to recover $1,200; that the affi-
davit is made in support of the arrest of said defendant,
under a writ of *capias;* and that the facts and circum-
stances alleged in said affidavit are within affiant's per-
sonal knowledge.   The affidavit then states that Elliott,
the defendant, is a broker and dealer, on commission, in
stocks, etc., with his office in Grand Rapids, where he
resides; that on or about February 25, 1900, the plaintiffs
made a contract with him whereby they furnished said
defendant with market quotations, and he placed orders
received by him from his patrons with them; that on
August 24, 1900, he ceased to send orders; that on May
20, 1900, they met him at his request, and he then stated
that the city of Grand Rapids had imposed a license fee
of $500 per annum upon each broker dealing on margins,
that the same applied to him, and that he had not the
money to pay it, and unless it was paid he would be
obliged to quit business; that he said further that he had
a large number of good patrons, and fine prospects for
building up a good business to the mutual advantage of
plaintiffs and himself, and requested them to pay the
license; that, believing and relying upon his statements,
they agreed to send him $500, to be used only for such
purpose; that they did send him their check for $500, and
that the same was afterwards returned to them, bearing
his indorsement, and, to affiant's personal knowledge, it
had been duly paid.   It is further alleged that the state-
ments that he had a large number of good patrons, and
fine prospects for building up a good business for their

mutual advantage, were untrue, and so known to be by defendant, and also that said license fee did not have to be paid at once, and that affiant believes that they were made for the fraudulent purpose of obtaining the money and appropriating it to his own use, and that before he received it the ordinance requiring the payment of licenses was repealed, and that he appropriated the money to his own use, and refused to return or repay the same. The affidavit further says that on July 31, 1900, the plaintiffs owned a promissory note for $700, and that said defendant informed them that he could collect said note to better advantage than they could, and, if they would send the note to him for collection, he would collect the same, and remit the proceeds as fast as collected, without charge; that they sent the note, and he collected $100, and without authority took a new note for $600, payable to his own order, and has since refused to deliver either the money or the note to plaintiffs, and has said that he would never pay or account for any portion of the same.

Counsel contend that, as to the first claim, the affidavit does not state a cause of action, because it was a gaming contract, void under 3 Comp. Laws 1897, § 11373; and, further, that the money sent to pay the license fee is stated to have been sent on Monday, in confirmation of an agreement made on the Sunday previous, and that such contract is void because made on Sunday.

We cannot assume that this was a gaming contract, and the affidavit does not show that the sales contemplated were within the prohibition of the statute. *Donovan* v. *Daiber*, 124 Mich. 49 (82 N. W. 848).

The Sunday contract was void (see *Aspell* v. *Hosbein*, 98 Mich. 117 [57 N. W. 27]), and the most favorable view of the transaction for the plaintiffs that can be taken is that the defendant received money for their use and benefit, through fraudulent representations made on Sunday, and that he has converted it to his own use, in violation of the trust upon which he received it. Again, under section 9998, this process was warranted if it can be said

that the affidavit states that this money was procured by false pretenses and converted to defendant's use; and the fact that the pretense was followed by plaintiffs' promise to send the money should make no difference, whether made on Sunday or not, the vital thing being the fraud.

It is claimed by respondent's counsel that the affidavit fails to state a case entitling them to a *capias* as to the $700 note. We think the affidavit shows an unlawful conversion of plaintiffs' property ( *i. e.*, the note and its proceeds ), and this would entitle them to a *capias*. See *Hicks' Case*, 20 Mich. 280; *Wilcox* v. *Ismon*, 34 Mich. 268; *Watson* v. *Judge of Superior Court of Detroit*, 40 Mich. 729; *Hatch* v. *Saunders*, 66 Mich. 181 ( 33 N. W. 178 ).

The affidavit concludes with the statement that "the plaintiffs have a good cause of action * * * in an action of trespass on the case, and for fraud and breach of trust arising upon contract, express and implied." It is said these claims cannot be joined in one action. We are of the opinion that the two causes of action particularly set forth in the affidavit may be prosecuted in one action.

Some other points are made, but our examination of them convinces us that they are not fatal to this proceeding.

The writ will issue as prayed.

The other Justices concurred.