FRANCK *v.* McGILVRAY.

1. CONTRACTS — FORMATION — OFFER AND ACCEPTANCE — CORRESPONDENCE.

In assumpsit on a contract to clear the title to certain land for an interest therein, evidence consisting of letters between the parties examined, and *held,* to show that the minds of the parties never met on any of the several offers and counter offers.

2. SAME—ACCEPTANCE OF OFFER—IMPLICATION.

Acceptance of the offer contained in a letter cannot be implied from the recipient's acts in furthering the business referred to therein where he expressly declined the offer and made a counter proposition by letter.

3. WORK AND LABOR — QUANTUM MERUIT — ACCEPTANCE OF SERVICES RENDERED.

There can be no recovery on quantum meruit for services performed where no contractual relation existed between the parties.

Error to Manistee; Rose, J. Submitted April 19, 1906. (Docket No. 100.) Decided May 24, 1906.

Assumpsit by Lauritz S. Franck against Jennie McGilvray and Blanche Baker for work and labor. There was judgment for defendants on a verdict directed by the court, and plaintiff brings error. Affirmed.

*Frank L. Fowler,* for appellant.

*Dovel & Dovel,* for appellees.

CARPENTER, C. J. Plaintiff brought this suit to recover for services rendered and expenditures made in clearing up the title to a piece of land owned by defendants. The trial court directed a verdict for defendants on the ground that they were under no obligation to pay for the services and expenditures sued for. Plaintiff asks

us to reverse the judgment entered on said verdict. The sole question in this case is whether there was any contract between plaintiff and defendants. As all the dealings between the parties took place by correspondence, the proper construction of that correspondence will determine whether they entered into a contract. We state so much of the correspondence as is necessary to make such determination:

September 28, 1903, plaintiff wrote defendants as follows:

"In looking over some records the other day I came across a parcel of land which ought to belong to you and your sister. This land is in the name of your mother and has been for a great many years. * * * It was sold for taxes and bought in by one John Baxter. I find that in January, 1899, he had sold it to a Polander. * * * According to our law this would have to be taken up within five years from the date of sale, which would be January next, so would have to be attended to at once or before that time. The land is not of very great value and have no idea how much this would cost, as to getting the title straightened out. If you will quitclaim your interest over to me, I will see what can be done. * * * Upon receipt of answer from you, if agreeable, I will ascertain what the cost will be and let you know. Should the cost be too great, it would hardly be worth while, otherwise should be attended to at once."

The first named defendant answered this letter on the 26th of October, 1903, saying:

"Now, we did not know this land was within our reach until you wrote, but if there is anything in it for us we want it, of course; but, if it costs more than the land is worth, we don't want to bother with it. Now, you have kindly offered to look it up for us. We will be glad to accept your offer, and if anything can be done it would be a good time just now while Manistee is booming. * * * We will be glad to have you to attend to this for us, and, if there is anything in it, you will get your share as well as my sister and I."

November 28, 1903, plaintiff wrote defendants:

"I have had an abstract made of the land. My attorney has been away, * * * and is expected home some time this or next week, when I will have him go over the abstract and get his opinion on the matter, and will then advise you."

And again, on December 17, 1903, he wrote that his attorney advised him—

"That he could reclaim it [the land] without much doubt. * * * He told me that if it could be settled without suit, that for his services he would charge $35 in addition to the actual expenses which amount he could not state at this time, but if the thing had to go to suit, why the cost would be considerably more. * * * I assumed the authority to have him go ahead and start the thing, by having him notify the man who holds the land what we propose to do and see if he would be willing to relinquish for a small sum, which of course would be cheaper than commencing suit. * * * I will be willing to carry this thing through for you to pay all the actual costs, nothing allowed for my time, and, when the land is sold, to divide the proceeds equally between us, one-half to go to you girls and one-half to me * * * but will want a reply to this as to whether this will be agreeable or not."

December 26th, defendant Jennie McGilvray wrote:

"Now, if you remember, I told you we would be willing to give you one-third; that would be allowing you the same as ourselves. Now, I think this is only fair."

On the 28th of December, before receiving defendant's letter of December 26th, plaintiff wrote:

"My attorney notified the man who has the land at the present time. Told him * * * that I would probably give him $50. * * * The limitation of time on this, in which to bring suit for recovery, expires January 4, 1904. * * * Suit will have to be brought on next Saturday, January 2d, and I have so instructed the attorney, which will be brought in my name and thus save any extra expense of you coming here. I inclose you herewith a quitclaim deed from you and your sister to me of the land. * * * Do not cause any delay in executing this matter, as it must be back here by Saturday next."

December 30, 1903, plaintiff wrote:

" I note what you say in regard to my proposition to divide the proceeds of the land. * * * You state that you made a proposition in your former letter * * * to give me one-third of the net proceeds. In this you are mistaken. I still think my proposition a very fair one. * * * ' I trust you have used every effort to get the papers (quitclaim deed) back on time, otherwise what I have done would be of no avail whatever."

To this letter defendants made no reply.

Plaintiff wrote again January 9, 1904, saying:

" In case there is anything in this thing that you don't want to do so as it can be carried through, kindly advise me at once, and I will drop the matter. * * * Court convenes on the 20th inst. I have started the case as I have already stated in my letter when I sent the deed, and I cannot go into court and carry this thing through without something to show my authority to do so. I will be home again on Saturday next the 16th inst. and if the papers are not here at that time will have to drop it entirely."

The statement in the foregoing letter that plaintiff had started a suit was untrue.

Defendants never answered this letter, and plaintiff wrote again on January 16, 1904:

" I have heard nothing from you. * * * I think you are taking the wrong course in this matter. I am perfectly willing and will only be too glad to drop this matter at this point, as this thing concerns you and not me. * * * All that I ask is an answer to my letters."

January 25, 1904, defendants wrote plaintiff:

" An attorney advised us not to sign any Q. C. D. If you wanted to do us a kindness you could get it settled without it, so we wrote a friend of ours, and he advised us to let Hart and Swigart handle it, so we did, and to our satisfaction. It is all settled, and we are in possession of it, so I think this is all."

By the settlement above referred to, defendants, following the plan devised by plaintiff, purchased the tax titles on their property for $50.

No contract was entered into by the foregoing correspondence, unless defendants' assent to that contract may be found in their letter of October 26, 1903, their letter of December 26, 1903, or in their letter of January 25, 1904, for they wrote no other letter. It is clear that such assent cannot be found in the letter of December 26th or that of January 25th, for in each of those letters defendants rejected plaintiff's proposition. It follows that there was no contract, unless defendants' assent thereto may be found in their letter of October 26th. If we construe that letter most favorably to plaintiff, we find therein that defendants proposed to give plaintiff an interest in their land if he would clear up their title. This proposition did not create a binding contract unless and until plaintiff accepted it. Did plaintiff accept it? He certainly did not notify defendants that he accepted it. He notified them that he would clear up the title if they would give him a one-half interest in the land. This was certainly not an acceptance, for it cannot be claimed that the interest that defendants offered plaintiff was a one-half interest. It is argued that, notwithstanding this notice, it is to be inferred that plaintiff accepted defendants' proposition. Before giving such notice plaintiff had, as the correspondence shows, performed some service for the purpose of clearing up defendants' title. It is claimed, as we understand the brief of counsel, that plaintiff's acceptance of defendants' proposition is to be inferred from his performance of this service, "and whether or not he afterwards wanted one-half, or misunderstood defendants' offer, does not alter the established contract." For the purpose of this case it may be conceded that if plaintiff, on receipt of defendants' letter, had not replied thereto, but had proceeded to clear up the title, his acceptance of the terms of that letter would be implied. There can, however, be no such implication where, as in this case, plaintiff notified defendants that those services were not rendered upon the terms proposed by them, but upon terms proposed by him to which he asked their assent. As was said in a similar case:

"The law cannot imply that a person promised to do that which in express terms he refused to do." *Lamson Consolidated Store-Service Co.* v. *Weil,* 15 Daly (N. Y.), 498.

I conclude, therefore, that plaintiff never accepted the proposition made by defendants in their letter of October 26th. Instead of accepting it, he made a counter proposition—a proposition which, as above stated, defendants rejected. It follows that the trial judge was right in deciding that there was no contract.

Plaintiff contends that he has a right to recover upon the quantum meruit because defendants received the benefit of his services and expenditures. We answer this in the language of the trial judge:

"The right to recover at all must be based upon a contractual relation between these parties, and, as no such relation existed, it follows that no recovery can be had."

Judgment affirmed.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.