MCCAIN *v.* SMITH.

WORK AND LABOR—IMPLIED CONTRACTS—PARTNERSHIP ASSOCIATIONS, LIMITED.

Testimony tending to show that defendant was secretary and treasurer of a limited partnership association, that plaintiff's testator was private secretary of defendant's father and occupied the same offices with defendant, that he was some-

times employed by other persons as accountant, and kept books of the association of which defendant was secretary, that testator sent defendant a statement of account for his services, and in reply defendant did not admit or deny the account unqualifiedly but asked that it be corrected and returned to him, requires the submission of the defendant's liability to the jury.

Error to Wayne; Murphy, J. Submitted January 18, 1911. (Docket No. 103.) Decided March 13, 1911.

Assumpsit by Frederick E. McCain as executor of the estate of Edmund S. McCain, deceased, for services rendered. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Reversed.

*Frederick E. McCain, in pro. per.*

*Robson & George (Julian H. Harris, of counsel), for appellee.*

HOOKER, J. The plaintiff brought this action to recover against the defendant for the services of his testator in keeping certain books of a partnership association, limited, of which the defendant was secretary and treasurer, and has appealed from a judgment entered upon a directed verdict for the defendant.

No testimony was offered for the defendant, and the important question is whether plaintiff made a *prima facie* case.

Plaintiff testified that the Smiths, one S. L. Smith and his son, Angus, the defendant, occupied a suite of rooms in an office building in Detroit; that his (plaintiff's) father was the private secretary of S. L. Smith. There is no direct testimony regarding the nature of the private business carried on by S. L. Smith, if any. Plaintiff did testify that he was a large stockholder in the Walton Salt Company. There is no testimony tending to show what

the testator's duties as private secretary were. It does appear that he worked as Smith's private secretary at these offices, and that during the period covered by plaintiff's claim he was at times employed on "outside work for outside people." Some letters written by defendant to plaintiff's testator appear to relate to the salt association and its business, and to affairs of a lumber business or account. No one testified to the terms of the contract of hiring of the private secretary, or what his duties were. Nothing is shown as to the management of the Walton Salt Association, or who its officers were, except as plaintiff testified that defendant acted as secretary and treasurer. There is no testimony that any one did or did not request the testator to keep the salt company's books. There is testimony that he did keep books of the business, and that in 1906 plaintiff wrote and his father (the testator) signed a letter to Angus Smith, then living at Lansing, inclosing an account for these services. He produced a letter written by defendant as follows:

(Letter head of Olds Motor Works, Detroit, Mich., U. S. A., crossed out and Lansing, Mich., U. S. A., placed underneath.)

"1/8/06.

"Mr. E. S. McCain,
        "719 Hammond Bldg.,
                "Detroit, Mich.
"*Dear Sir:*
    "I have your esteemed favor under date of Jan. 5th. I will be pleased to give this account my 'early attention' the first time I see you, but in the meantime return same to you for correction, as I note you have left off charges for drawing your breath and other active services, which should, of course, receive remuneration. Kindly correct bill and return to me at your convenience.
                    "Yours very truly,
                        "Angus Smith."

He did not produce the inclosure returned. Later plaintiff sent defendant the following letter and account:

(Letter head of the Standard Accident Insurance Co.)

"August 26, 1908.

"Mr. ANGUS SMITH,

"7th Floor Hammond Bldg.,

"City.

"*Dear Sir:*

"I beg leave to call your attention to old account for expert services furnished by my father, as per invoice inclosed. As this account has stood for some time and has received no attention, I wish to emphasize the fact that the matter has not been dropped, but will be pushed until some satisfactory settlement has been made.

"Yours very truly,

"F. E. McCAIN."

August 1, 1908.

Mr. Angus Smith, to E. S. McCain, Dr.

| | | | |
|---|---|---|---|
| 1906. | | | |
| Feb. 1. | To care of books belonging to Walton Salt Association, Ltd., from February 1st, 1906, five years at $50 per month. | $3,000 | 00 |
| 1905. | | | |
| July 31. | By cash on account---------------- | 21 | 00 |
| | | $2,979 | 00 |

There was nothing to affirmatively show that it was not the duty of testator as private secretary to do this bookkeeping for S. L. Smith, or that Angus Smith was a stockholder in the salt association, or received any compensation for acting as secretary and treasurer, or that testator was not hired by the board of managers to perform the services for that company, by a contract strictly complying with the law. 2 Comp. Laws, § 6083. It does not appear affirmatively that he was or was not paid for such services, unless it is to be deduced from the correspondence, and the fact that plaintiff once went into the office and saw his father with a trial balance from these books and a five-dollar bill in his hand. Perhaps it may be claimed that the following letter should also be mentioned in this connection:

(Letter head of Harbor Point Club House.)
"Harbor Springs, Mich., 8 / 29 / 02.
"*Dear Mr. McCain:* I enclose you herewith check $50.00 (fifty) for cigarettes & other necessaries of life.
"Hastily.
"Yours truly,
"Angus Smith.
"Let me know if many bill collectors are looking for Salt Co. Sec'y & Treas."

But for the letter of January 8, 1906, and the account, we should be constrained to say that a *prima facie* case was not made out. But the letter and inclosure, and the answer from Angus Smith, are some evidence that testator at the time claimed a right to compensation from Angus Smith. This was of itself no evidence tending to prove a contract; but had the answer admitted the validity of the claim, the correspondence would have been sufficient to warrant a judgment for plaintiff. The answer did not unqualifiedly admit the validity of the claim, or any part of it, and were it not for the last line, we should affirm the judgment; but, as it is, we think the cause should have been submitted to the jury.

The judgment is reversed, and a new trial ordered.

Ostrander, C. J., and Bird, Moore, and McAlvay, JJ., concurred.