# JUNE TERM, 1912.*

McCAIN *v.* SMITH.

1. CONTRACTS — IMPLIED CONTRACTS — WORK, LABOR AND SERVICES.

When work has been performed by one at the request and with the knowledge of another, or an employment has been authorized, the performance of the work on the one hand, and the acceptance of benefits thereof on the other, establish a contractual relation, and, unless there is something in the relation to repel the idea of payment, create a right to compensation for such work.

2. SAME.

But in the absence of evidence that services were performed at the request of defendant, plaintiff was not entitled to a verdict as a matter of law.

3. SAME.

Plaintiff's decedent was employed as bookkeeper by defendant's father, a stockholder of the Walton Salt Company, a partnership association, of which defendant was secretary, and in which defendant also had a small amount of stock. During a period of about five years decedent kept the books of the partnership in conjunction with his work in the office of defendant's father, and, as plaintiff claimed, at defendant's request. In response to a bill for services rendered by decedent to defendant, the latter wrote that he would be pleased to give the account his early attention the first time he saw decedent, and in the meantime returned it for correction, as decedent had left off charges for drawing his breath and other active services, which should receive remuneration; to kindly correct and return, etc. *Held,* that a verdict for defendant was supported by the evidence.

*Continued from Vol. 171.

4. SAME—EXPRESS CONTRACT.

Neither an express nor an implied contract can be created unless the parties sustain contractual relations,—that mutuality of will and interaction of parties generally defined as "privity."

5. SAME.

If a service is spontaneous or an act of kindness, not upon request, or if another ground more probable than the promise of some recompense exists, no contract relation is established. *Woods* v. *Ayres*, 39 Mich. 351 (33 Am. Rep. 396).

6. SAME—EXECUTORS AND ADMINISTRATORS.

Conflicting evidence examined, and *held*, to warrant a verdict that plaintiff's decedent did not perform services for defendant or at his request.

7. SAME—CHARGE—CONDUCT OF COURT.

And it is *held* that the charge of the court fairly submitted the question to the jury.

8. APPEAL AND ERROR—REMARKS OF JUDGE—SAVING QUESTIONS FOR REVIEW.

Without exceptions taken on the trial, the court will not review remarks made by the trial court.

9. SAME.

Nor was an incorrect statement of the trial court, made in his charge relative to a fact which was not controlling in the case, sufficiently prejudicial to warrant a reversal.

10. WITNESSES—ESTATES OF DECEDENTS.

In order that testimony of an agent may be rendered incompetent under 3 Comp. Laws, § 10212, as amended by Act No. 30, Pub. Acts 1903, because equally within the knowledge of deceased, such agency must have had reference to the contract in question in the case.

11. SAME—STOCKHOLDERS—CORPORATIONS.

Testimony of stockholders and officers in the same corporation in which defendant held stock, but which was not a party to the case, was not barred under the statute.

Error to Wayne; Hosmer, J. Submitted April 10, 1912. (Docket No. 98.) Decided October 1, 1912.

Assumpsit by Frederick E. McCain as executor of the estate of Edmund S. McCain against Angus Smith for

services rendered. Judgment for defendant. Plaintiff brings error. Affirmed.

*Frederick E. McCain, in pro. per.*

*Robson & Murfin,* for appellee.

STONE, J.  This case is here for the second time. When first here, it was reported in 164 Mich. 683 (130 N. W. 342).  The action is to recover against the defendant for the services of plaintiff's testator in keeping certain books of a partnership association, limited, of which the defendant was secretary and treasurer, from February 1, 1901, to February 1, 1906.  Upon the first trial no testimony was offered by the defendant, and the trial court directed a verdict for the defendant; and the important question before this court, when the case was here before, was whether the plaintiff had made a *prima facie* case.

In view of the letter of defendant to plaintiff's testator, bearing date January 8, 1906, in answer to a letter of the latter, of January 5, 1906, inclosing an account for the claimed services (which letter will appear hereafter in the charge of the court), we were of the opinion that the case should have been submitted to the jury, and it was reversed and sent back for a new trial.  The case has been again tried at the circuit; and, upon the material questions presented, the case, as made by plaintiff upon the second trial, is not essentially different from the case made upon the first trial.  Upon the second trial, evidence on behalf of the defendant was introduced, and the case was submitted to the jury upon a charge of which the following is the substance:

"The testimony shows that for a considerable period of time Edmund S. McCain, who is now dead, was in the employ and in the office of S. L. Smith in this city, in the Hammond Block; that while he was there he performed services for Mr. Smith, for which he was paid.  It shows also that he claimed to have performed considerable services for a certain slate company, in which Samuel L.

Smith was a large stockholder, and that an adjustment was made in his lifetime of that matter. It shows also that he kept the books, in so far as it was essential, of the Walton Salt Corporation, I believe is the name, which is a limited partnership, or partnership association, limited, under the laws of this State, and that he continued to keep the books, as I say, in so far as bookkeeping was required in that regard, for a period of several years. The testimony shows that a bill was rendered by Mr. McCain, not to the Salt Company, but to the defendant in this case, who was secretary and treasurer, I think, of the company, and that in response to such a bill a letter was written by the defendant, Angus Smith, as follows:

" 'January 8, 1906.

" 'Mr. E. S. McCAIN,
　　　　" '719 Hammond Bldg.,
　　　　　　　" ' Detroit, Michigan,
" ' *Dear Sir:*

" 'I have your esteemed favor under date of January 5th. I will be pleased to give this account my " early attention " the first time I see you, and in the meantime return the same to you for correction, as I note you have left off charges for drawing your breath and other active services, which should, of course, receive remuneration. Kindly correct the bill and return to, me at your convenience.

" 'Yours very truly,<br>" 'ANGUS SMITH.'

"Now, it is contended on behalf of the plaintiff in this case that, inasmuch as the secretary and treasurer, as a single officer of the Salt Co., is not authorized to contract a debt for more than $500, and inasmuch as larger services were rendered, as he claims, to the corporation than the sum of $500, that therefore this is necessarily an obligation of the defendant, and not of the Walton Salt Co., and he contends that the letter which I have just read to you shows contractual relations existing between himself and the defendant, Angus Smith—between the deceased and the defendant, Angus Smith.

" I cannot follow the reasoning of the plaintiff's counsel in this case, in so far as he claims that the evidence shows that the obligation to keep the books—the hiring, if there was any hiring, to keep the books—of the Walton Salt Co. was beyond the power of Angus Smith, because, gentlemen of the jury, it does not follow that because he kept the books for six years that he was hired for that purpose,

and, in the absence of any evidence which would tend to show that there was any hiring for that length of time, I do not think it can be implied from the evidence in this case; and so, as I say, I cannot follow the argument of counsel in that regard.

"Now, I am asked to charge you that the evidence shows that there were contractual relations between the plaintiff's intestate, Edmund S. McCain, in his lifetime, and Angus Smith. I cannot say that is so. The only evidence there is in this case of any hiring whatsoever must be implied, if implied at all, from the letter which has been read.

"Now, if there is a contract to be implied at all between the plaintiff's intestate, Edmund S. McCain, and the defendant, it must come, I think, gentlemen of the jury, from the letter and from the last sentence of the same, because there is no implication of a contract drawn between the plaintiff's intestate, Edmund S. McCain, and Angus Smith merely from the rendition of the services to the company in which he was an officer, because services were rendered to the Walton Salt & Lumber Co.—because the Walton Salt & Lumber Co. was bankrupt, and because he has not received it, will not in itself, gentlemen of the jury, support an inference that the defendant is liable. If liability come, it must come from the inference which would arise from that letter; and that is the only evidence in the case from which inference can be drawn. It is for you to say whether that letter does or does not support that inference; whether Mr. Smith intended to place the entire of the services upon the same basis as of the drawing of the breath, or whether by that last clause of the letter is to be inferred that services were rendered to him.

"Now, I think, gentlemen of the jury, that is substantially all I need say on that branch of the case, except as I pass over so many of the charges which have been given me—the requests to charge which have been given me to give you.

"There is one feature of this case to which I must call your attention as the counsel has. Mr. McCain is, of course, dead, and he cannot testify, and, of course, under those circumstances, as has been stated by counsel, where an action or proceeding has been prosecuted or defended by the heirs, assigns, or personal representatives of the deceased party, the opposite party, if examined as a wit-

ness in his own behalf, is not permitted to testify as to those things which were equally within the knowledge of the deceased; and so the statute of this State bars Mr. Smith from being a witness in his own behalf as to those matters which were equally within the knowledge of the deceased. That, perhaps, it is well for me to say to you that you may understand, or that your recollection may be refreshed as to the reason why Mr. Smith has not testified upon the principal matters in this case.

"I am asked to charge you, and I think I have already charged you, that whatever may have been the effect of the letters in correspondence, there is no direct testimony in this case that Angus Smith ever hired Mr. E. S. Mc-Cain to keep the books of the Walton Salt Association; and the mere fact that the books were kept by Mr. Mc-Cain would not establish any liability on the part of the defendant to pay for this work. It cannot be shown— defendant cannot be shown to be liable—unless there was a contractual relation shown to have existed between himself and E. S. McCain for the keeping of the books, or the payment by Angus Smith therefor. I think that is so.

"I am asked to charge you, and do charge you, that the mere fact that Mr. McCain did the work on these books does not create any liability on the part of Angus Smith, unless you find that the latter promised to pay for the work.

"I charge you that there is no evidence in this case that the defendant ever promised to pay Mr. McCain for services on these books, unless said promise to pay is found in letter of January 8, 1906, which has been read to you, and in which the defendant returns the statement for services, with the suggestion that no charge has been made for drawing breath, etc. It is your duty to determine whether the defendant meant by this letter to acknowledge any indebtedness to Mr. McCain, or whether he meant to infer that the sending of the bill to him was absurd, and was not worthy of any serious consideration.

"In this connection you must consider the fact that this letter has been carefully preserved by the plaintiff, but that he does not produce the statement which was inclosed with it, and which might have had upon it some notation or writing which, perhaps, showed the intent, beyond question, of the defendant to deny his liability.

"You may consider, as having a bearing on this question, that this statement has not been produced by the

plaintiff in connection with the letter, although it must have been last in his possession—the possession of the plaintiff's intestate, that is. That is undoubtedly so; but you have heard his explanation in that regard, gentlemen of the jury, and that you should take into consideration as well.

"I am asked to charge you that you must consider in connection with this letter, as having a bearing upon its meaning, the fact that there is no proof that after the receipt of this letter any further demand was made upon Angus Smith, upon this account, until the letter of the plaintiff under date of August 26, 1908. You must take this fact into account in deciding how Mr. McCain himself understood this letter; and if you find that Mr. McCain understood this letter to be a denial of liability you are justified in adopting the same view as to its meaning.

"You may take into consideration, gentlemen of the jury, as well the fact that no suit was brought in the lifetime of the deceased, Edmund S. McCain. You have also, in that connection, the explanation of the plaintiff in the case, that he wished, I think, only one controversy pending at a time.

"I am asked to charge you that these letters are not in themselves evidence tending to prove any contract by the defendant to pay Mr. McCain for the work upon these books—only some evidence that at the time Mr. McCain claimed some compensation. I think that is true as to the letter of the plaintiff in this case; but, of course, gentlemen of the jury, what significance is to be attached to the letter in which the account was presented is a question for you, and not a question for me.

"I am asked to charge you that if you find the work on these books was a part of the work which Mr. McCain was hired to do for Mr. S. L. Smith your verdict must be for the defendant. Of course, gentlemen, that is so.

"I am asked to charge you if you believe Mr. McCain was fully compensated for keeping these books by the $50 a month which he received from Mr. S. L. Smith, and it is within the purview of his contract with Mr. Smith to keep these books, your verdict must be for the defendant. That unquestionably, gentlemen of the jury, is so.

"Now, if you find that there is a contract relation existing, or there was a contract existing, between the father of the plaintiff in this case, of whom he is the administra-

tor, and the defendant, then the question for you is, What was the value of the services?"

The second trial resulted in a verdict and judgment for the defendant, and the plaintiff has brought the case here upon writ of error, and the record contains 68 assignments of error. These assignments of error are considered by the appellant under the four following heads, which will be considered in the order in which they are presented:

(1) When the work or services have been performed at the request of and with the knowledge of a party, or an employment has been made or authorized by the said party, the authorized performance of the work on the one part, and the acceptance of the work or benefits on the other, establish a contractual relation, and also, there being nothing in the relation that would repel the idea of payment, establish the right to payment for the said services or work. Again, it was at least a question for the jury, and not the court, as to whether a contractual relation had been established or not.

(2) The secretary and treasurer of either a corporation or partnership association, limited, has no inherent or implied authority, as such, to hire a bookkeeper or an accountant, and thereby render or cause the corporation or partnership association to be liable for the value of the services rendered by the said bookkeeper or accountant. But the person creating such a debt, as secretary and treasurer, is himself, at least presumptively, personally liable therefor. Not only is this so, but the said secretary and treasurer, being also one of the managers of the partnership association, limited, and having created a debt or liability for $500 or over, without a writing to the effect, signed by at least two of its managers duly elected, is himself personally made expressly liable by the statute governing partnership associations, limited, in this State.

(3) The court may instruct the jury as to the law applicable to the case; but he must not indicate his opinion

as to the facts, either by emphasizing certain testimony, or by calling attention to the lack of it, nor by giving opinion as to its interpretation, nor as to the weight to be given specific testimony of witnesses, or their absence. Again, he should not outline a mode or course of defense for the benefit of either party to the cause. Nor should the charge of the judge be, in effect, a direction to the jury to find for the defendant, when the evidence is plainly controverted.

(4) The testimony in this case by the defendant, Angus Smith, his father, S. L. Smith, and his attorney and agent, Frank E. Robson, of matters which were equally within the knowledge of the deceased, Edmund S. Mc-Cain, is barred by the statutes of this State.  Act No. 30, Pub. Acts 1903.

1. It is argued by appellant that when work or services have been performed at the request of and with the knowledge of a party, or an employment has been authorized by the said party, the authorized performance of the work on the one part, and the acceptance of the work and the benefits thereof on the other, establishes a contractual relation, and also, there being nothing in the relation that would repel the idea of payment, establishes the right to payment for the said work or services.  This proposition is probably substantially correct.  The difficulty with its application here is that there was no direct evidence that the services were performed at the request of the defendant.  The vital question in the case was whether such contractual relations were shown by the evidence.  We hardly understand counsel when he says, " It was at least a question for the jury, and not for the court, as to whether a contractual relation had been established or not," for, as we understand the record, that very question was left to the jury by the trial court; and, as we understand the argument of appellant, it is to the effect that a question was presented to the jury as to whether or not a contractual relation had been established.

There is no question that plaintiff's testator did some

work on the books of the Walton Salt Association, Limited. It appears undisputed that S. L. Smith had invested the money in this association, and had given to the defendant one-half of the stock which he (S. L. Smith) had purchased. There was evidence that this association had become insolvent finally, or at least did not have the means to employ a bookkeeper. It was a fair question for the jury, under the evidence, whether plaintiff's testator was not to do all the work of this nature in the office of S. L. Smith, including the very work in question, like other matters in which the elder Smith was interested. It is to be noted that there is an entire absence of any evidence of a hiring of plaintiff's testator by the defendant; and there is much force in the claim of the defendant that the relations of the deceased were entirely with S. L. Smith. We think the important question in the case was whether there was an implied contract on the part of the defendant to pay plaintiff's testator for the work done upon the books in the office, or whether such services were not all embraced in his employment by S. L. Smith as the latter's private secretary.

It is a familiar doctrine that neither an express contract, nor one by implication, can come into existence, unless the parties sustain contract relations; that, to constitute either the one or the other, the parties must occupy towards each other a contract status—mutuality of will and interaction of parties, generally expressed, though not very clearly, by the term "privity." Without this a contract by implication is quite impossible.

As was said by Justice GRAVES, in *Woods* v. *Ayres,* 39 Mich., at page 351 (33 Am. Rep. 396):

"Where there is a spontaneous service as an act of kindness and no request, or where the circumstances account for the transaction on some ground more probable than that of a promise of recompense, no promise will be implied. The contract connection is not established. (Citing authorities.)

"The parties must be consenting bargainers personally or by delegation, and their coming together in contract

relation must be manifested by some intelligible conduct, act, or sign. If not, no contract is shown. (Citing authorities.) The privity essential to a contract must proceed from the will of the parties."

See, also, *Michigan College of Medicine* v. *Charlesworth*, 54 Mich. 522 (20 N. W. 566); *Covel* v. *Turner*, 74 Mich. 408 (41 N. W. 1091); *Whittemore* v. *Scientific Institute*, 128 Mich. 518 (87 N. W. 623); *Franck* v. *McGilvray*, 144 Mich. 318 (107 N. W. 886).

The jury might fairly infer from the evidence that the services were rendered without any expectation at the time that the defendant would compensate the plaintiff. The conceded impecunious circumstances of the plaintiff's testator rendered it improbable that he would have worked five years for the defendant without asking for compensation during the progress of the work, had such compensation been within the contemplation of the parties. We think the evidence was sufficient to warrant the jury in reaching the conclusion that it was not contemplated by the parties that the services were being performed for the defendant. By the undisputed evidence, the relation which plaintiff's testator and the defendant had sustained, during all this time, to S. L. Smith furnishes a reasonable explanation for all that was done by the former. The conduct of the parties should be examined with scrutiny in such a case. We think the jury was warranted in reaching the conclusion, which they probably did reach, that the defendant, by his letter of January 8, 1906, intended to treat the claim of plaintiff's testator as an unreasonable one. Over 2½ years elapsed after the writing of this letter before any further claim was made; and this suit was not brought until after the death of testator.

2. It is next urged that the secretary of this association had no authority to hire a bookkeeper; that, as the partnership association could not be held liable, the secretary himself is liable, because the work was done upon the books of the association. We think this involves the same question as that which we have already referred to.

To say that, because the association was not liable the defendant must be, is to beg the entire question. The question still remains: Was there a contractual relation between the parties?

We have examined both the evidence and the charge of the court with care, and we think that the question was fairly submitted to the jury; and they having found that no contractual relation, either express or implied, ever existed between the parties to this litigation, therefore the plaintiff has no cause to complain of the result.

3. It is next urged that the case should be reversed because of the improper conduct of the trial judge, as well in the charge of the court as upon the trial of the case. We do not think there is any merit in this position. The substance of the charge is here set forth, and we think it fairly and fully submitted the case to the jury, and was warranted by the evidence.

And as to certain remarks which were made by the trial judge during the progress of the case, but not excepted to by appellant, they are not entitled to discussion.

In the thirty-second assignment of error, it is claimed that the circuit judge erred and was mistaken, as matter of fact, when he said that Mr. S. L. Smith was the larger stockholder in the Walton Salt Association, Limited— larger than his son, the defendant—and used other language in that connection. It does appear that until the report of 1906 was made the amount of stock held by Samuel L. Smith and the defendant was equal; but in 1906 Samuel L. Smith held more than the defendant. As has already been said, the evidence is undisputed that S. L. Smith had made the investment in this stock, and had given the defendant the shares which the latter held. It is also true that the defendant had been elected the secretary and treasurer of the association. It is equally true that the books were kept in the office occupied jointly by the two Smiths. We do not think that this statement made by the trial judge, under the circumstances in which it was made, should be held to be reversible error.

4. The only remaining question which we think worthy any consideration is that, because of the death of plaintiff's testator, the testimony of the defendant, of S. L. Smith, and of Frank E. Robson was improperly admitted under the statute. Act No. 30, Pub. Acts 1903.

As to the testimony of the defendant himself, we do not think that it appears that anything to which he testified can be said to have been equally within the knowledge of the deceased. He was permitted to testify as to his own relations to his father, S. L. Smith, after 1898. He was also permitted to testify that he was in his father's employ in 1901, and the salary which he received. Certainly this cannot be said to have been matter equally within the knowledge of the deceased by anything that appears in this record.

As to the testimony of Frank E. Robson, there was no evidence that in any way indicated that he was an agent in the making or continuing of any contract with the deceased, and we therefore think that the authorities cited by the appellant are inapplicable. A reference to those cases will show that the agency must be with reference to the contract. *Blodgett* v. *Vogel*, 130 Mich. 479 (90 N. W. 277); *Gustafson* v. *Eger*, 132 Mich. 387 (93 N. W. 893); *Detroit United Railway* v. *Smith*, 144 Mich. 235 (107 N. W. 922); *Locklund* v. *Burman's Estate*, 146 Mich. 233 (109 N. W. 255).

It is further claimed that because S. L. Smith and the defendant were each stockholders, managers, and officers of the Walton Salt Association, Limited, their testimony was also barred. It is only necessary to say that the association is not a party to this suit, and that there is no corporation involved in this litigation as a party. Therefore this testimony does not come within the class excluded by the statute. We do not understand that the agents of individuals would be excluded from testifying, unless they were agents in the making or continuing of the contract. See *De Mary* v. *Burtenshaw's Estate*, 131 Mich. 326 (91 N. W. 647).

We discover no reversible error in the record. We think that the case was fairly submitted to the jury by the trial court; and the judgment of the circuit court is affirmed.

MOORE, C. J., and STEERE, McALVAY, BROOKE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.